**UNITED STATES of America, Appellee,**

v.

**Giovanni CASTIELLO,
Defendant, Appellant.**

No. 89–1927.

United States Court of Appeals,
First Circuit.

Heard March 8, 1990.
Decided Sept. 12, 1990.

**2**

Robert W. Harrington with whom Thomas J. Iovieno was on brief, for defendant, appellant.

Paul V. Kelly, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for U.S.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

When he arrived at Logan Airport on the morning of November 23, 1988, defendant Castiello was right on time for the long-awaited meeting with "Joe." It was the eve of Thanksgiving and the defendant's ambitious drug distribution scheme, possessing little substance at the start, at last seemed about to take on more as Castiello surrendered $68,000 in cash to undercover agent "Joe" Desmond for four kilograms of imaginary cocaine. The fly was in the ointment all along, of course, its flight plan delayed just long enough to ensure that Castiello not sense the sting until all voluntary statements against penal interest were preserved on tape. After appellant was apprehended red-handed, he was tried, convicted, and sentenced under 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846 for attempting to possess, with intent to distribute, a Schedule II controlled substance. As there is no discernible substance to the appeal, we affirm the district court judgment.

**I**

The first contention advanced on appeal is that the district court erred by allowing Agent Desmond to interpret the following taped admission by the defendant: "[I] [u]sed to buy stuff off him seven or eight years ago for 35, 37, 33, 34, so you know the market changes, you know what I'm saying?"[1] After the district court overruled a defense objection,[2] Desmond responded, "There is one thing, other than

---

1. The statement was made during a meeting at which the defendant dickered with Desmond over price. Defendant boasted about his previous drug dealings, as a means of inducing Desmond to reduce the "asking" price by $1,000 per kilogram. "It's going to be regular.... I've been in business for *ten* years." "I done some big business in my day." (emphasis added). These recorded statements closely preceded the one Desmond translated for the jury.

2. The objection was that "the [jury has] heard the tape and they have a transcript which I think varies from some of the tapes, and now we have another version of what the tapes meant." As an additional basis, defense counsel objected that there was "nothing slangy" about Castiello's admission; "those are numbers." On appeal, Castiello does not challenge the use of the tapes or the transcripts at trial.

the obvious, that by naming prices seven, eight years ago, that indicates to me obviously that the defendant was in business seven or eight years ago." Defense counsel moved for mistrial on grounds that the answer was unresponsive, improper and prejudicial. The court denied the motion for mistrial.

The defendant maintains on appeal that the taped admission interpreted by Desmond contains no drug jargon, only "plain language" that a jury would have no difficulty understanding. Therefore, defendant argues, Desmond's interpretation was not "helpful" to the jury, in the sense intended by Federal Rule of Evidence 702,[3] and constituted improper "other acts" evidence under Federal Rule of Evidence 404(b).

■ We review the district court's denial of the motion for mistrial under an abuse of discretion standard, *see United States v. Giorgi,* 840 F.2d 1022, 1036 (1st Cir.1988); *United States v. Chamorro,* 687 F.2d 1, 6 (1st Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 613 (1982), according considerable deference to its determination that the expert testimony would be helpful to a jury in these circumstances, *see United States v. Hoffman,* 832 F.2d 1299, 1310 (1st Cir.1987) ("Lay jurors cannot be expected to be familiar with the lexicon of the cocaine community.").

■ We conclude that the district court acted well within its discretion. As the statement intimates *in haec verba* ("you know what I'm saying?"), the vocabular form the defendant employed with Desmond was not so readily comprehensible to the layman that it could not bear elucidation by a law enforcement agent knowledgeable in the ways of the drug world. The admission was phrased in drug world jargon. For instance, we do not think that a lay jury reasonably could be expected to know that "35, 37, 33, 34" referred to prices for a kilogram of cocaine seven or eight years earlier, much less what those prices were.[4] *See Hoffman,* 832 F.2d at 1310.

Desmond's interpretive testimony that the defendant had been in the drug business seven or eight years earlier amounted to no more than an inexorable corollary to Castiello's taped admission that he "[u]sed to buy stuff ... seven or eight years ago...." Assuming, as defendant contends, that the statement needed no interpretation, it follows that the jury already understood, from having heard that portion of the tape played previously, that the defendant was in the drug business seven or eight years ago. In that event there can have been no unfair prejudice. At most, Desmond's testimony represented a harmless reiteration of the taped statement already heard by the jury. *See, e.g., supra* note 1. Conversely, assuming, as we conclude, that the taped statement did warrant expert interpretation, there was no basis for its exclusion under Evidence Rule 702.

■ Although the defendant further contends on appeal that Desmond's interpretation of the drug world jargon constituted "wrongful act" character evidence inadmissible under Evidence Rule 404(b),[5] no Rule

---

**3.** Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702.

**4.** The point is borne out by Desmond's testimony.

> A. Beyond that, going back seven or eight years, I was employed at DEA, although not as an agent going back that far, and I recall the price of cocaine due to its limited supply in the United States and this area, due to the

law of supply and demand, the prices were up that high and upwards when I came on the job, 40 and $50,000.

> Even in this conversation we are talking about 17, 18 thousand dollars now, and that's based on a huge influx of cocaine and wide availability.

> So what the statement told me was that—

> Q. Was it a reference to prices?

> A. Yes, it was.

> Q. And prices in the thousand dollar range. Would that be a fair statement?

> A. Yes, that's correct.

**5.** Evidence Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

404(b) objection was raised at trial, as required by Evidence Rule 103(a)(1),[6] either when the recorded statements were heard by the jury or when Desmond's interpretative testimony was received in evidence.[7]

■ We have explained that Evidence Rule 103(a)(1) was designed to require an objecting party "to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured." *United States v. Walters*, 904 F.2d 765, 769 (1st Cir.1990). Not only did defendant's objection not refer to Rule 404(b), or mention a ground based in the substance of Rule 404(b), it intimated no basis of objection other than Rule 702, except, conceivably, Evidence Rule 403.[8] As the objection was not sufficiently specific to alert the court that it contemplated a basis in Rule 404(b), we review for plain error. *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 583 n. 27 (1st Cir.1987) (where objection did not refer to Rule 404(b), held: "[w]ithout a timely objection stating the specific grounds therefor, our review is limited to plain error"); Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b).

■ As we stated in *United States v. Zeuli*, 725 F.2d 813 (1st Cir.1984):

The most striking aspect of ... [Evidence Rule 404(b) ] is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely

---

person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Fed.R.Evid. 404(b).

6. Evidence Rule 103(a)(1) provides:
   (a) **Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits ... evidence unless a substantial *right of the party is affected, and*
   (1) **Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection, if the specific ground was not apparent from the context.*
   Fed.R.Evid. 103(a)(1) (emphasis added).

7. The tapes were made available to defense counsel months in advance of trial. Yet there was no objection to the playing of the tapes on the ground that they contained "wrongful act" character evidence inadmissible under Evidence Rule 404(b). So far as the record reveals, neither the prosecutor nor defense counsel considered the taped admissions as "other acts" evidence. There is no reason, therefore, that it should have been "apparent from the context" to the district court that Rule 404(b) was the "specific ground of objection" relied on by the defendant. *See* Fed.R.Evid. 103(a)(1). Similarly, we consider it extremely improbable that the jury would have treated the defendant's statements improperly. *See United States v. Gonzalez–Sanchez*, 825 F.2d 572, 583 n. 27 (1st Cir. 1987); Fed.R.Crim.P. 52(a).

8. Rule 403 permits the exclusion of relevant evidence if, among other reasons, "its probative value is substantially outweighed by the danger of unfair prejudice ... or by considerations of ... needless presentation of cumulative evidence." Fed.R.Evid. 403. "Unfair prejudice" connotes "an undue tendency to suggest deci-

sion on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. advisory committee's note. It would be frivolous to contend that an accurate translation of the defendant's drug world jargon intimated that the jury should decide the defendant's fate on an improper basis. Desmond's testimony was of considerable probative value, especially as to defendant's intent to distribute the cocaine he was negotiating to purchase from Desmond, and also to evidence defendant's predisposition to engage in illicit drug activity. *See Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (predisposition is "'the principal element in the defense of entrapment,'" and it "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime.") (quoting *United States v. Russell*, 411 U.S. 423, 433, 436, 93 S.Ct. 1637, 1643, 1645, 36 L.Ed.2d 366 (1973)). *Accord United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir.1988).

Desmond's testimony was not a "needless presentation of cumulative evidence." One function of interpretation is to transpose veiled language into clear terms. In that sense, all accurate interpretations are cumulative, but not needlessly so where the original language bears clarification.

In the circumstances of the instant case the probative value of the interpretive testimony was not "substantially outweighed" either by unfair prejudice or by needless presentation of cumulative evidence. *See* 22 C. Wright & K. Graham, *Federal Practice and Procedure*, § 5221 at 309–310 (1978) ("The phrasing of Rule 403 makes it clear that the discretion to exclude does not arise when the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence.").

invoked limitations of Rule 403. *United States v. Fosher,* 568 F.2d 207, 212 (1st Cir.1978). Moreover, the test of admissibility is committed primarily to the trial court. *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.1975). *Id.* at 816 ("intent" exception to Rule 404(b) warranted admission of evidence). *See United States v. Mazza,* 792 F.2d 1210, 1223 (1st Cir.1986) ("Mazza's statements to Agent Kelly (who was posing as the 'Florida source') tended to show an effort by Mazza to impress Kelly with his 'experience' in the drug trade and thereby to encourage Kelly to go ahead with the transaction. Thus, Mazza's remarks were probative of his intent...."), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987). *See supra* note 1. *See also United States v. Medina,* 761 F.2d 12, 15 (1st Cir.1985) (two step application of Rule 404(b): first, determine whether the evidence has "special" probative value, *i.e.,* shows "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;" second, balance its probative value against any unfair prejudice). Like the statement itself, Desmond's translation was probative of defendant's "intent." *See* Fed.R.Evid. 404(b). There was no error in its admission in evidence.

## II

■ The second contention is that Desmond's interpretive testimony preordained a reluctant decision to employ an entrapment defense. The record belies Castiello's claim. Five months before trial the tape recordings of the incriminating admissions were made available to defense counsel, who submitted a proposed entrapment instruction prior to trial. The record demonstrates that entrapment offered whatever prospect remained for mounting a successful defense after the jury heard the defendant's damning admissions on tape. We are unimpressed with the claim that Castiello was forced to resort to an entrapment defense in order to counter Desmond's *interpretation* of the admission that Castiello had been in the drug business seven or eight years earlier, particularly since that admission was made *after* defendant's uninterpreted admission that he had "been in business for *ten* years."[9]

## III

Castiello asserts that the sentence imposed under the Sentencing Guidelines should be set aside on the ground that the district court was unaware that the Sentencing Guidelines permit downward departures. *See United States v. Tucker,* 892 F.2d 8, 9 & n. 2 (1st Cir.1989) (no appeal from denial of request to depart downward under Sentencing Guidelines, unless district court unaware of discretion to depart).[10]

---

9. On the other hand, the recorded conversations themselves may well have counselled recourse to an entrapment defense. The threshold a criminal defendant must surmount in order to earn an entrapment instruction was satisfied, if at all, before the challenged interpretation ever came into evidence; that is, when the recorded admissions themselves were allowed in evidence without objection. *See Mathews,* 485 U.S. at 62, 108 S.Ct. at 886 (defendant "entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment"). The taped conversations revealed that Agent Desmond initiated contact with Castiello. Desmond expressed interest in supplying Castiello with cocaine on a regular basis. Desmond offered defendant certain inducements to buy cocaine, including a reasonable price and a guarantee of quality. Thus, Castiello's predisposition, or lack thereof, was at issue. *See also supra* note 1.

10. The only plausible basis advanced in support of a downward departure is an intriguing one. The defendant says that the undercover agent offered to sell cocaine at such low prices that the district court should depart below the guideline sentencing range as a deterrent to police manipulation of the applicable offense level through artificial inflation of the volume of controlled substance involved in the crime of conviction. Otherwise, the defendant argues, the police will lower the "asking" price for cocaine in order to leverage the volume a reverse sting target would agree to buy, thus activating higher offense levels requiring longer prison sentences. Aside from the apparent intrinsic disincentives to official manipulation of the sentencing guideline offense levels (*e.g.,* police desire to avoid exposing reverse sting operation; avoid enhancement of entrapment defense), the primary problem with the defendant's contention is that it is without an evidentiary predicate.

■ The sentencing judge was aware that a sentence of imprisonment below the sentencing guideline range may be imposed without contravening the Sentencing Guidelines. At the sentencing hearing, defense counsel requested "a downward departure as the Court is entitled to do...." Defense counsel volunteered that "there are a number of cases which suggest that there is still discretion, as Your Honor knows, under specific provisions of the Guidelines." The court expressed its intention to consider a downward departure only after evaluating the relevant facts and "to what extent there is any ability to exercise ... 'discretion'...." The judge stated that he would determine the requirements of the sentencing guideline "mechanics" before determining "what, if any, level of discretion ... is available." Although aware of the discretionary power to depart downward from the sentencing range, the district court elected to impose the minimum sentence within the guideline sentencing range. Thus, the record reveals that the court considered, and expressly rejected, a downward departure in the present case.[11]

We therefore are without jurisdiction to entertain defendant's challenge to the district court's refusal to depart downward under the Sentencing Guidelines. *Tucker,* 892 F.2d at 9 n. 2.

---

The uncontroverted evidence reveals that the defendant, from the start, was interested in purchasing far more than 500 grams of cocaine. The smallest quantity defendant ever mentioned was "kilograms." On one occasion Castiello said, "I don't want to work with two or three pieces [kilograms of cocaine], you understand?" Instead, Castiello suggested that he could buy ten kilograms of cocaine a month. When Agent Desmond said, "[T]here's just too much credit involved ...," Castiello replied, "No, bring ... four [kilograms of cocaine] and I'll pay you the whole thing—what can I tell you?"

The *statute* under which Castiello was sentenced, 21 U.S.C. § 841(b)(1)(B), and the Sentencing Guidelines U.S.S.G. §§ 2D1.1(a)(3), 2D1.4(a), were activated at 500 grams and 3.5 kilograms of cocaine, respectively, 21 U.S.C. § 841(b)(1)(B); U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c)(7), 2D1.4(a), both well below the ten kilogram quantity Castiello offered to buy from Desmond. We therefore refuse more definitive treatment of the theoretical concerns Castiello advances on appeal.

## IV

■ The final contention on appeal is that the sentencing judge should have considered that 21 U.S.C. § 841(b)(1)(B) did not accord requisite due process notice of the criminal penalties for violating section 841(a)(1). Castiello relies on *United States v. Colon–Ortiz,* 866 F.2d 6 (1st Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989), in which the defendant argued that section 841(b)(1)(B) "violates due process by imposing two inconsistent penalty schemes, one allowing the court to impose merely a fine and the other requiring the imposition of a five-year minimum term of imprisonment." *Id.* at 8.[12] The defendant in *Colon–Ortiz* argued that "the statute should be declared unconstitutional because it fails to provide adequate notice of the contemplated penalties for a Section 841(a)(1) violation." *Id.*

We determined in *Colon–Ortiz* that the language of section 841(b)(1)(B) is internally inconsistent, that it "constitutes a notice deficiency and raises serious due process concerns." *Id.* at 9. We held, nonetheless, that there was no due process violation because the defendant "was not harmed by the [notice] deficiency." *Id.* at 10. We went on to explain that the district court, in denying the defendant's motion to dismiss

---

**11.** The district court explained as follows: "I think in the sentence that I'm prepared to give consistent with the Guidelines, that indeed there is no undue fairness (sic) in this specific respect. And I appreciate that uniformity is a value to be considered...."

**12.** A person convicted of distributing 500 grams or more of a mixture containing cocaine "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years ..., a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, United States Code, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both." 21 U.S.C. § 841(b)(1)(B). "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein." *Id.*

in *Colon–Ortiz*, had determined that the most lenient reading of the sentencing provision would not have helped Colon–Ortiz. *Id.*

'[A]mbiguity requires the application of the most lenient interpretation of the sentencing provision. In this case that would mean only that the court would have had the option of the imposition of a suspended sentnece [sic] or probation with a fine, an option I would not have chosen anyway.' *United States v. Ortiz,* No. 87–297, slip op. at 2 (D.Mass. Feb. 17, 1988). Given the district court's determination that the defendant should receive some term of imprisonment, under any reading of the statute the court was required to impose the five-year minimum sentence.

*Id.* at 10–11. And so it is in the present case.

The Sentencing Guidelines prescribe a ninety-seven month minimum term of imprisonment for the crime of which Castiello was convicted. The district court, aware of its discretion to depart downward, decided not to do so. Thus, the district court implicitly determined that a sentence of imprisonment, rather than a fine or probation, was required in any event. Therefore, as in *Colon–Ortiz*, the effect of the sentencing decision in the present case was to assure that Castiello was occasioned no harm as a result of the notice deficiency complained of on appeal.[13]

*The district court judgment is affirmed.*

---

**13.** Furthermore, should there remain any question as to the appositeness of *Colon–Ortiz* in these circumstances, we note that the defendant is entitled only to "plain error" review, due to the failure to raise the present issue in the district court. *See Hernandez–Hernandez v. United States,* 904 F.2d 758, 763 (1st Cir.1990). In that connection, looking beyond the clear disinclination toward lenity on the part of the district court, two other considerations preclude a showing of plain error here. First, defense counsel, apparently recognizing that it was unrealistic to advocate more lenient treatment, urged the court to impose the mandatory statutory minimum term of imprisonment. Second, in *Colon–Ortiz,* 866 F.2d at 11, we determined that the proper interpretation of the statute does mandate a prison term. There was no plain error.