**ELMENDORF GRAFICA, INC.,
Plaintiff, Appellant,**

v.

**D.S. AMERICA (EAST), INC. d/b/a
Screen (East), Defendant,
Appellee.**

**No. 94–1695.**

United States Court of Appeals,
First Circuit.

Submitted Nov. 9, 1994.

Decided Feb. 21, 1995.

---

Jose L. Rivero Vergne, Moredo & Moredo, Ramon Rosado–Vila and Ramon Rosado–Vila Law Offices, on brief, for appellant.

Francisco M. Troncoso, Troncoso & Becker, Edward J. Underhill, Steven L. Katz, and Masuda, Funai, Eifert & Mitchell, Ltd., on brief, for appellee.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOYLE, Senior District Judge.[*]

LEVIN H. CAMPBELL, Senior Circuit Judge.

Elmendorf Grafica, Inc. appeals from an order of the district court granting D.S. America (East), Inc.'s motion to stay a pending federal diversity action until similar litigation in the state courts of Illinois is concluded. The United States District Court for the District of Puerto Rico accepted the recommendation of the magistrate judge that a stay was justified under principles declared in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We vacate the stay and remand for proceedings in the district court.

## I.

This case arises out of a dispute between Elmendorf Grafica, Inc., a Puerto Rico corporation with its principal place of business in Puerto Nuevo, Puerto Rico, and D.S. America (East), Inc., d/b/a Screen (East) (hereinafter "Screen"), an Illinois corporation with its principal place of business in Rolling Meadows, Illinois. On March 20, 1992, the parties entered into an equipment purchase agreement under which Elmendorf agreed to purchase computer hardware and software at a price of $120,000. Elmendorf paid $84,000 in advance, leaving a balance due of $36,000. The equipment failed to perform to its satisfaction, and Elmendorf, claiming ongoing damage to its business as a result of this failure, refused to pay.

### A. The Illinois Action

On November 25, 1992, Screen sued Elmendorf for $36,000 in the Circuit Court of Cook County, Illinois. The summons and complaint in that case were served on Elmendorf's president on December 3, 1992. Instead of answering, Elmendorf filed a limited appearance. On February 2, 1993, Elmendorf moved to dismiss for want of personal jurisdiction and, after briefing and argument, the Cook County Circuit Court allowed Elmendorf's motion on May 17, 1993, and dismissed Screen's action for want of personal jurisdiction. While the court modified its order on June 8, 1993, the dismissal remained. Screen appealed to the Illinois Appellate Court, seeking to overturn the dismissal, on July 8, 1993.

The parties thereupon engaged in a war of motions in the appellate forum. On October 14, 1993, Screen filed a motion for stay of proceedings to amend record on appeal, which included a request for additional time to file its brief. The appellate court denied that motion in February 1994. Elmendorf, having strongly opposed Screen's motion, filed its own motion for leave to supplement the record on March 24, 1994, requesting additional time to file its brief. After the appellate court's disposition of this motion, Elmendorf moved for clarification on May 11, 1994. That motion was allowed on August 10, 1994, with yet another extension of time for Elmendorf to file its brief. On September 16, 1994, Elmendorf filed a third request for additional time to file its brief because its attorney was preparing for another trial and lacked the time to prepare its brief. Insofar as we are aware, the appeal has yet to be decided.

### B. The Puerto Rico Action

On January 15, 1993, two months after Screen sued Elmendorf in Illinois, and a few weeks before Elmendorf moved to dismiss that action, Elmendorf sued Screen in the Superior Court of Puerto Rico, San Juan Part, alleging, *inter alia,* breach of contract, false advertising, and fraud stemming from the same equipment purchase agreement which was the subject of the Illinois litiga-

---

tion. Elmendorf requested a declaration that the agreement was null and void, damages in the amount of $684,700 plus interest, and reimbursement of the $84,000 advance payment. Screen was not served with the summons and complaint in the Puerto Rico action until June 14, 1993, one week after the Cook County Circuit Court's amended dismissal of the Illinois action for want of personal jurisdiction.

On July 13, 1993, alleging diversity of citizenship, Screen removed the Puerto Rico action to the United States District Court for the District of Puerto Rico. On September 8, 1993, Screen moved to dismiss and/or stay the Puerto Rico federal proceedings citing principles established by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and subsequent cases. This motion was referred to a magistrate judge, who, on October 12, 1993, and in the absence of any opposition by Elmendorf, recommended a stay of proceedings pending the outcome of the Illinois litigation. Elmendorf filed its opposition on October 15, 1993, apparently before receiving word of the magistrate judge's decision, and on October 21, 1993, also filed objections to the magistrate judge's report and recommendations, along with an explanation for the delay in filing its opposition. The district court referred the matter to the magistrate judge for reconsideration in light of Elmendorf's objections.

On April 8, 1994, the magistrate judge issued a second report, again recommending a stay. Elmendorf filed objections to this second report on April 25, 1994.[1] On May 5, 1994, the district court issued an order adopting the magistrate judge's conclusions and ordering a stay of the proceedings. Elmendorf appeals.

## II.

### A. A Preliminary Matter

Elmendorf argues that the district court failed to perform a *de novo* review of the magistrate judge's proposed findings, as required by 28 U.S.C. § 636(b)(1)(C) (1988).[2] The district court's order of May 5, 1994 states, "The Court, having reviewed the conclusions of the U.S. Magistrate in the two Report and Recommendations filed in this case, finds that his decisions are warranted in law and fact." Elmendorf argues that this statement is inconsistent with § 636's requirement.

 Elmendorf has called no authority to our attention holding that, in order to

---

1. Screen states in its brief that "it is unclear whether" Elmendorf's objections to the April 8, 1994 magistrate judge's report, filed on April 25, 1994, were filed within the 10–day period required by 28 U.S.C. § 636(b)(1)(C) (1988). This seems to suggest that we should deem Elmendorf's appeal waived. *See, e.g., Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994) (failure to object within § 636(b)(1)(C)'s ten-day period waives claim for purposes of appellate review); Fed.R.Civ.P. 72(b) (same). However, it appears that Elmendorf's objections were timely filed. *See* Fed.R.Civ.P. 72(b) (allowing service by mail of magistrate's report); Fed.R.Civ.P. 6(a) and (e) (describing method of computing time period under federal rules, and stating that, where period allowed is less than 11 days, intervening Saturdays, Sundays and holidays shall not be counted, and, where service upon a party is to be made by mail, adding three days to the period is allowed).

2. 28 U.S.C. § 636 states, in pertinent part:
 (b)(1) Notwithstanding any provision of law to the contrary—
 (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion ... to involuntarily dismiss an action....
 (B) a judge may also designate a magistrate ... to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)....
 (C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
 Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court *may accept,* reject, or modify, *in whole* or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.
 28 U.S.C. § 636(b)(1) (1988) (emphasis added).

demonstrate compliance with § 636's *de novo* review requirement, a district court must make findings and rulings of its own rather than adopting those of the magistrate judge. The statute authorizes the district court to adopt in whole as well as in part the proposed findings or recommendations of the magistrate judge. Where, as here, the magistrate judge decided on an undisputed factual record, the district court was certainly not required to rehash the magistrate judge's reasoning. The role of the magistrate judge is "to relieve courts of unnecessary work." *Henley Drilling Co. v. McGee*, 36 F.3d 143, 151 (1st Cir.1994), *quoting Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

## III.

### A. The *Colorado River* Doctrine

The Supreme Court in *Colorado River* established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings. The Court held that, in "exceptional" circumstances, 424 U.S. at 818, 96 S.Ct. at 1246–47, a federal court could decline jurisdiction based on " 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," ' " *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))).

■ The Court in *Colorado River* mentioned four illustrative factors for determining whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. In *Moses H. Cone*, the Court added two additional factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor, mentioned but not applied in

*Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20, and counted by some courts, is the vexatious or reactive nature of the federal lawsuit, *see, e.g., Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 308–10 (1st Cir.1986).

■ In *Colorado River*, the Supreme Court emphasized that the stay or dismissal authorized there should be used sparingly. The Court spoke of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, and cautioned that "[o]nly the clearest of justifications will warrant dismissal," *id.* at 819, 96 S.Ct. at 1247. The weight a court should give any single factor may vary greatly depending on the case, and "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required," *id.* at 818–19, 96 S.Ct. at 1246–47. The district court must weigh the important factors "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

■ The decision whether to surrender jurisdiction is "necessarily left to the discretion of the district court in the first instance," *id.* at 19, 103 S.Ct. at 938, and the district court's decision may be reversed only for an abuse of that discretion. Such discretion must be exercised, however, within the constraints of the "exceptional-circumstances test." *Id.; see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529 (1st Cir.1991), *cert. denied*, 503 U.S. 986, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992). In a discussion which concluded that it made no difference in this context whether the district court ordered a stay or dismissal, the Court emphasized the limits of this discretion, saying:

When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a

serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943.

## B. The Magistrate Judge's Recommendation

The magistrate judge's second report and recommendation considered *Colorado River,* reiterating rightly that the balance in any decision to stay or dismiss under that doctrine should be "heavily weighted in favor of the exercise of jurisdiction." The magistrate judge nonetheless felt that a stay was appropriate here:

> In this case, plaintiff is not seeking to obtain possession of a res. The evidence and witnesses are split between Illinois and Puerto Rico. No one forum is more convenient for both parties at the same time. If this court exercises its jurisdiction, the two parties would be litigating very similar issues in two separate forums. The Illinois court was the first to assume jurisdiction. Since the purchase agreement entered into by the parties provides for the application of Illinois law, it would be more appropriate for the Illinois court to interpret it. In sum, the totality of the circumstances favors the stay pending resolution of the Illinois litigation.

*Id.* at 3, 103 S.Ct. at 930. As the district court adopted this analysis, we focus on the magistrate judge's reasoning.

## IV.

In the first three sentences of the above-quoted reasoning, the magistrate judge concluded that the factors he was considering favored neither party. We have no difficulty with the magistrate judge's assessment of those three items.

■ The magistrate judge went on to conclude, however, that the next three factors weighed in favor of staying the federal action so that Screen could go forward in Illinois. We disagree. In our view, the magistrate judge did not give appropriate attention to the fact that, at the time the issue of a stay was before the district court (indeed, up until now), the Illinois action consisted of no more than a pending appeal from the order of the Cook County Circuit Court dismissing the action for lack of personal jurisdiction. This was not a case where the parallel state action was strongly underway, making it perhaps reasonable, depending on the facts, to await the outcome in the state case before proceeding in the federal court. Here, if the Cook Country Circuit Court's dismissal for lack of personal jurisdiction should be affirmed by the Illinois Appellate Court, there will be left in existence no state action whatever; while if the lower court's dismissal should be reversed on appeal, the parties will merely be back at the very beginning of the process of litigating the merits of their controversy. Under such circumstances, the federal diversity action in Puerto Rico, which was not encumbered by any threshold jurisdictional question, was the more immediately available vehicle for litigating the dispute.

The magistrate judge said that if the district court action were allowed to proceed, "the two parties would be litigating very similar issues in two separate forums." But this description suggests a parallelism that did not then exist, given that the Illinois case had been dismissed on jurisdictional grounds, leaving only an appeal from the dismissal. Only if plaintiffs were to win the appeal would the Illinois proceedings become truly parallel to those in the federal district court. By then, were it not for the stay, the district court in Puerto Rico might be well into the merits of the controversy. To be sure, calling a halt to the federal case would permit the parties to devote all their energies to the battle over jurisdiction in the Illinois appellate court, and, depending on the outcome, perhaps eventually to litigate their dispute in the Illinois circuit court. But forcing the plaintiff in the federal case to sit on its hands for so long is not consonant with *Colorado River* and its progeny, which describe the balance as "heavily weighted in favor of the exercise of [federal court] jurisdiction. *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. Those cases require an affirmative showing of "the clearest of justifications," *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247, or some "exceptional basis," before a federal court properly defers to a state court pro-

ceeding. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir.1991).

■ Here, given the problem with the state proceedings we have mentioned, we cannot discern an exceptional basis clearly favoring federal court deference. Screen's primary argument to the district court was that to proceed in both courts would entail a duplication of "the costs and delays of litigation." Duplication, standing alone, is rarely an exceptional basis that warrants a stay or dismissal of the federal action. *Rojas–Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir.1991). But even assuming duplication were an important concern, the cure is scarcely to abandon a viable federal forum in favor of a questionable state one.

■ Nor are we impressed with Screen's argument that, if forced to proceed in the federal action in Puerto Rico, its state claim will be subject to dismissal because of an Illinois procedural rule providing for dismissal "where there is another action pending between the same parties for the same cause." Whatever the force of this argument in some different factual context, we see no good reason for a federal court to defer to a problematic state proceeding merely because the existence of the federal case may give the state courts some further reason to dismiss the state action. Indeed, if Screen's argument is correctly premised, the duplication of proceedings which worries Screen will cease. And, of course, Screen is free to assert its claim to the balance due under the equipment purchase agreement as a counterclaim in the federal action, *see* Fed.R.Civ.P. 13.

■ We further disagree that deference should be paid to the Illinois court simply because that court was the first "to assume jurisdiction." It is true the Illinois case was filed first. But soon after the Illinois case was filed, it was dismissed for lack of personal jurisdiction, and that was the posture of events when the federal court decided the stay motion. In such circumstances, it is hard to understand why the mere fact of priority in filing would be a point in favor of a stay. To be sure, if jurisdiction were found on appeal, the Illinois case could eventually go forward on the merits. But in *Moses H. Cone* the Supreme Court indicated that the order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the *Colorado River* balancing is being done. *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939–40. Courts are instructed by the Supreme Court to measure which action—the suit in the federal court or that in the state court—is the more advanced in a "pragmatic, flexible manner, with a view to the realities of the case at hand." *Id.* Here the dismissal for lack of personal jurisdiction in the Illinois case made the federal action the front-runner. · Hence, having regard for "the realities of the case at hand," the Illinois action did not enjoy priority in time over the federal case, and the magistrate judge erred in citing this factor as a reason for the stay.

■ The magistrate judge was also impressed with the fact that Illinois law is likely to be involved in the present contract dispute. We will concede the expertise of an Illinois court in its own law, and that federal law is not in issue here, but we do not believe that this factor is entitled to much weight for present purposes. Nothing suggests that the parties' claims present particularly novel, unusual or difficult questions of legal interpretation. Federal courts are used to researching and analyzing the law of different jurisdictions. The federal district court in Puerto Rico will be able to apply Illinois law to the extent required. *See Gonzalez v. Cruz*, 926 F.2d 1, 5 (1st Cir.1991) ("The mere fact that the outcome of the case is governed by state law does not warrant dismissal—to hold otherwise would undermine the purpose and reach of federal diversity jurisdiction."); *Rojas–Hernandez*, 925 F.2d at 496 (reversing a stay where the issues of state law to be considered by the federal court were "neither unsettled nor complex").

■ A further factor, which the magistrate judge did not mention, and which strongly counsels against a stay here, is whether the state forum can adequately protect the parties' rights. *Moses H. Cone*, 460

U.S. at 26, 103 S.Ct. at 942.[3] Given the fact that when the district court was considering the request for a stay, it was entirely uncertain whether the Illinois courts had jurisdiction over the person of the defendant, the protection available to the parties' rights in Illinois was necessarily problematic. The Illinois court would, of course, be as well able as the federal court to dispose of the case if it had jurisdiction, but unless and until the personal jurisdictional question was resolved by the appellate court in favor of plaintiff, the utility of Illinois as a forum remained in grave doubt.[4]

■ We hold, therefore, that the balance of the *Colorado River* factors favored denying the stay, and certainly did not favor granting it, having regard for the uncertain status of the Illinois litigation. The exceptional circumstances that *Colorado River* calls for in order to stay or dismiss an action brought in a federal court, in favor of proceedings in a state tribunal, were not present. The district court should expeditiously proceed with the action.

*Stay vacated and case remanded to the district court for continued proceedings consistent herewith. Costs for appellant.*

---

**3.** As we have previously mentioned, the Court in *Moses H. Cone* also spoke of the need to find "that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." 460 U.S. at 28, 103 S.Ct. at 943. Should there be doubt of this, it would be, the Court said, "a serious abuse of discretion" to grant a stay. *Id.*

**4.** We also note Screen's contention that the federal action is vexatious and reactive. *See Moses*

*H. Cone,* 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20; *Fuller,* 782 F.2d at 308–10. We do not find merit in this argument. Elmendorf's action was filed two months after Screen's, but Elmendorf waited to serve process upon Screen until after the circuit court's dismissal of the state action for want of personal jurisdiction over Elmendorf. In these circumstances, Elmendorf's decisions to fight jurisdiction in Illinois and sue in its home court in Puerto Rico were not improper tactics such as to weigh in favor of a stay.