Novello, M.D. v. Randall, M.D.          CV-95-372-SD  07/11/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


John J. Novello, M.D.


_____v.                                    Civil No. 95-372-SD


Russell E. Randall, M.D.


O R D E R


In this diversity action, plaintiff John J. Novello, M.D., a New Hampshire citizen, seeks to recover damages allegedly suffered as a result of his acceptance of employment with defendant Russell E. Randall, M.D., a Vermont citizen, and his subsequent purchase of defendant's medical practice, Seacoast Nephrology, P.A. (Seacoast).

Presently before the court is defendant's motion to dismiss on the ground that there is a pending parallel state court action, Randall v. Novello, 95-C-874 (Rockingham County Superior Court, filed July 28, 1995), against Novello filed prior to the filing of the instant federal claims.  Plaintiff objects.


1.  Background

Both the state and federal actions stem from Novello's

employment by and eventual purchase of Randall's medical practice, Seacoast. Relying on Randall's alleged misrepresentations, Novello left his medical practice in Pennsylvania and joined Randall's practice in Portsmouth, New Hampshire, in June 1992. Complaint ¶¶ 12, 14. As part of Novello's compensation, Randall granted him options to purchase Seacoast stock, excercisable in two 25-percent increments (each equal to 25 shares of stock). Id. ¶ 12. By December of 1994, Novello had exercised both options, and had also purchased the remaining 50-percent interest in Seacoast from Randall for the agreed-upon sum of $355,741.62. Id. ¶ 21, 33. The transaction concerning the purchase of the remaining 50-percent interest is memorialized in an agreement between the parties dated December 29, 1994 (Agreement), which incorporates payment schedules and a non-compete clause.

On July 7, 1995, counsel for Novello contacted Randall and informed him that, after that date, Novello's payments under the Agreement would be deposited into a segregated account pending investigation of alleged misrepresentations by Randall during the negotiations surrounding the Agreement. See Letter dated July 7, 1995 (Exhibit A to Plaintiff's Opposition to Defendant's Motion to Dismiss).

On Friday, July 28, 1995, Randall filed a writ of summons

2

and declaration in the Rockingham County Superior Court seeking damages for Novello's alleged breach of the Agreement in failing to make payments as required under the Agreement. See Affidavit of John J. Ryan, Esq. ¶ 3 (attached to Defendant's Motion to Dismiss). Novello was served with the state court summons on August 4, 1995.

On Monday, July 31, 1995, Novello filed a complaint in this court, alleging misrepresentation in the contract negotiations, breach of the Agreement, breach of fiduciary duties, and unfair and deceptive business practices under New Hampshire Revised Statutes Annotated (RSA) 358-A:2, :10 (1995). Randall was served with the federal summons and complaint on August 2, 1995.[1] Randall answered the federal court complaint on August 17, 1995, and counterclaimed for breach of contract and for defamation. Randall subsequently moved to attach in aid of his counterclaim. Magistrate Judge Muirhead, after hearing oral argument, denied the motion to attach on February 12, 1996 (document 15). Randall filed the instant motion to dismiss on February 28, 1996.

---

[1]The court notes that paragraph 3 of Attorney Ryan's affidavit incorrectly asserts that "at a later date [than the date that Novello was served with the state court summons] defendant was served with the Federal Court Complaint." Similarly, the assertion in Randall's motion that the federal complaint was filed by Novello on August 4 is also incorrect.

3

## 2. Discussion

Randall argues, _inter alia_, that the state court action was commenced first. He further argues that continuing with both the federal and the state cases concurrently would waste both judicial and attorney resources. In essence, Randall has moved the court to abstain from exercising its jurisdiction in favor of allowing the state court action to proceed alone. Although Randall cites no authority to support such motion, the reasons for dismissal set forth in his motion most closely resemble the relevant abstention considerations articulated in _Colorado River Water Conservation Dist. v. United States_, 424 U.S. 800 (1976). Accordingly, Randall's motion will be treated as if it were brought under the _Colorado River_ doctrine.

In general, where the federal court has jurisdiction, the presence of a concurrently pending state action is not a bar to a federal suit arising from the same matter. _Id._ at 817. _Accord Burns v. Watler_, 931 F.2d 140, 146 (1st Cir. 1991) ("'the pendency of an overlapping state court suit is an insufficient basis in and of itself to warrant dismissal of a federal suit'") (quoting _González v. Cruz_, 926 F.2d 1, 3 (1st Cir. 1991)). The risk of duplicative litigation and inefficient use of resources is not sufficient to justify the decision to relinquish jurisdiction over a case. _Villa Marina Yacht Sales, Inc. v._

4

<u>Hatteras Yachts</u>, 915 F.2d 7, 13 (1st Cir. 1990), <u>dismissed on remand</u>, 762 F. Supp. 1007 (D.P.R.), <u>aff'd</u>, 947 F.2d 529 (1st Cir. 1991), <u>cert. denied</u>, 503 U.S. 986 (1992).

However, the Supreme Court recognizes a narrow exception to the general rule when, for reasons of "wise judicial administration," a federal court may be justified in surrendering its jurisdiction over a matter properly before it.[2] <u>Colorado River</u>, <u>supra</u>, 424 U.S. at 818. Nonetheless, the surrender of jurisdiction should only take place in exceptional circumstances, as federal courts generally have an "unflagging obligation . . . to exercise the jurisdiction given them." <u>Id.</u> at 817 (citations omitted).

The First Circuit, following the Supreme Court's decisions in <u>Colorado River</u> and <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983), has adopted a six-part test to

---

[2]The <u>Colorado River</u> doctrine is distinct from other abstention doctrines, which counsel that a federal court should abstain from exercising its jurisdiction: (1) in cases in which a federal constitutional issue "might be mooted or presented in a different posture by a state court determination of pertinent state law;" (2) where difficult questions of state law bearing on policy problems "of substantial public import whose importance transcends the result in the case then at bar;" and (3) where "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, . . . or collection of state taxes . . . ." <u>Colorado River</u>, <u>supra</u>, 424 U.S. at 813-17 (quotation and citations omitted).

determine whether exceptional circumstances justifying a surrender of federal jurisdiction are present. <u>See, e.g.,</u> <u>Elmendorf Grafica, Inc. v. D.S. America (East), Inc.</u>, 48 F.3d 46, 50 (1st Cir. 1995). The court must consider:

> (1) whether either court has assumed jurisdiction over a <u>res</u>; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation[;] . . . (4) the order in which the forums obtained jurisdiction[;] . . . (5) whether state or federal law controls[;] and (6) the adequacy of the state forum to protect the parties' rights.

<u>Id.</u>[3] The weighing of the foregoing factors does not amount to "a mechanical checklist," but rather involves a balancing of various considerations, with the balance weighted heavily towards the exercise of jurisdiction. <u>Moses H. Cone</u>, <u>supra</u>, 460 U.S. at 16.

At the outset, the court notes that the first two elements of the test can be summarily dispensed with. First, although Randall has filed motions to attach Novello's property in both the state and federal actions, such motion was denied by this court (Muirhead, M.J.), and the record is silent as to the status of that motion in the state court. It is thus clear that the federal court has not obtained jurisdiction over any of the

---

[3]This Circuit has also looked to the vexatious or contrived nature of the federal claim, <u>Villa Marina</u>, <u>supra</u>, 915 F.2d at 12, and has given some consideration, when considering dismissals sought under the <u>Colorado River</u> doctrine, to the principles underlying removal jurisdiction, <u>id.</u>

6

plaintiff's property--real or personal--and it appears that the state court has not either.  See Burns, supra, 931 F.2d at 147. Therefore, the first factor is not relevant here.

Second, aside from the inefficiency and duplication of effort involved, there is no peculiar inconvenience to either party associated with litigating the case in federal court.  See, e.g. id. (holding that two hour drive from defendant's residence to the federal courthouse did not represent sufficient inconvenience to warrant dismissal).

The third element, the desirability of avoiding piecemeal litigation, requires a closer analysis.  In evaluating the potential for piecemeal litigation, the court must look beyond the routine inefficiency associated with concurrently litigating both cases in separate forums and "determine whether there is some exceptional basis for requiring the case to proceed entirely in [state] court."  Villa Marina, supra, 915 F.2d at 16. Paramount weight is accorded when the piecemeal litigation results in "special complications" that could severely prejudice one of the parties.  Rojas-Hernandez v. Puerto Rico Elec. Power Auth., 925 F.2d 492, 496 (1st Cir. 1991).[4]

---

[4]As examples of parallel litigation which could produce "special complications" severely prejudicial to the parties, Rojas-Hernandez cites two insurance coverage cases, one of which noted that complications would result from inconsistent

(continued...)

In the instant case, there is not a significant risk of prejudice to either party should the federal case proceed to judgment. In particular, both parties' claims are grounded in straightforward New Hampshire law, and it is unlikely that "harsh, contradictory or unfair consequences" will result if both cases proceed. See Burns, supra, 931 F.2d at 146. Here, where judgment in the one case may be res judicata in the parallel case, consistency between the actions is likely. See Rojas-Hernandez, supra, 925 F.2d at 497. Thus, the risk of piecemeal litigation is not a significant factor counseling for surrender of jurisdiction.

Randall's central argument concerns the fourth element of the test, the order in which the forums obtained jurisdiction (also referred to as the "priority of filing" element). This element of the test--as are all the other Colorado River/Moses H. Cone factors--is to be treated in a "pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone, supra, 460 U.S. at 21. Priority is measured not merely by showing which complaint was filed first, but also by looking at the progress made in the two actions. Id. Thus, as here, where

    [4](...continued)
determinations of liability in the federal suit against the tortfeasor and the state suit against the insurer. See Rojas-Hernandez, supra, 925 F.2d at 496-97 (citing, inter alia, González, supra, 926 F.2d at 4).

the two actions were commenced within one day of each other, and service of process in both actions was completed within the next week, the actual order in which the complaints were filed and jurisdiction obtained is of limited significance.[5]  Accord Burns, supra, 931 F.2d at 147 (where "only one day separates the filing of the complaints in each court" and "both actions [are] proceeding at a normal pace," the timeliness factor of the Colorado River/Moses H. Cone analysis is rendered "inconsequential").

More telling is the progress of the action in the federal

---

[5]Under New Hampshire procedure, a civil action is commenced when the writ of summons is signed with the intention of having it served.  Desaulnier v. Manchester Sch. Dist., 140 N.H. 336, 338, 667 A.2d 1380, 1381 (1995); see generally 4 RICHARD V. WIEBUSCH, NEW HAMPSHIRE PRACTICE: CIVIL PRACTICE AND PROCEDURE § 428 (1984).  Jurisdiction attaches at the time of service of the writ of summons upon the defendant.  WIEBUSCH, supra, § 429, at 273 (citing Burleigh v. Leon, 83 N.H. 115, 117, 139 A. 184, 187 (1927)).  Only after service are the writ of summons, certificate of service, and entry fee filed with the clerk's office.  Id.
In contrast, the Federal Rules of Civil Procedure provide that a civil action is commenced upon the filing of a complaint with the court.  Rule 3, Fed. R. Civ. P.  For purposes of determining first-filed status as between two federal suits, the general rule is that jurisdiction relates back to the time of the filing of the complaint.  See Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir.), cert. denied, 456 U.S. 1007 (1982); Barber-Greene Co. v. Blaw-Knox Co., 239 F.2d 774, 778 (6th Cir. 1957); American Modern Home Ins. Co. v. Insured Accounts Co., 704 F. Supp. 128, 129 (S.D. Ohio 1988).
Such procedural differences between the state and federal systems make apparent the wisdom of looking to the progress of each of the suits rather than mechanically determining first-filed status.

court.  The record is silent as to any progress made in the state court aside from the filing of the writ of summons, declaration, motion to attach, and Novello's motion to stay the state court proceedings.  On the other hand, in federal court a complaint, answer, and counterclaim have been filed.  Moreover, Randall availed himself of the federal proceedings when he sought an attachment against Novello's property in the instant case.  Only now that such motion has been denied does he seek a dismissal.

In light of the temporal proximity of the parties' respective filing of the writ of summons in the superior court and the complaint in this federal court, the significant federal court proceedings to date, and the silence of the record as to Randall's progress in state court, the fourth element of the test comes down squarely on the side of retaining federal jurisdiction.

The fifth element of the Colorado River/Moses H. Cone test involves a determination of whether state or federal law will control the decision.  Although "'the presence of federal-law issues must always be a major consideration weighing against surrender,' . . . only in 'rare circumstances [will] the presence of state-law issues weigh in favor of that surrender,'" by the federal court.  Rojas-Hernandez, supra, 925 F.2d at 496 (quoting Moses H. Cone, supra, 460 U.S. at 26) (alteration in Rojas-

10

Hernandez).  In this case, the law of New Hampshire governs both actions.  However, the mere fact that both cases are grounded in New Hampshire law does not constitute an exceptional circumstance justifying surrender of jurisdiction.  Id.

The Colorado River/Moses H.Cone test's final element concerns the adequacy of the state court in protecting the rights of the parties.  Insofar as this factor becomes relevant only where there is a question as to the adequacy of the state court to adjudicate the claim, Rojas-Hernandez, supra, 925 F.2d at 496, and the New Hampshire Superior Court is undoubtedly capable of adjudicating a contract suit arising under New Hampshire law, consideration of this factor does not counsel for the surrender of jurisdiction.

Outside of the six enumerated Colorado River/Moses H. Cone factors, perhaps the penultimate consideration for the court is whether the federal claims are contrived or vexatious.  See Moses H. Cone, supra, 460 U.S. at 17 n.20 (finding "considerable merit" in looking to the motivation for the filing of the second suit); Villa Marina, supra, 915 F.2d at 15.  Nothing in the record suggests that the filing of the federal case by Novello one business day after the filing of the state court suit by Randall was done as a "defensive tactical maneuver" or under contrived grounds.  E.g., Villa Marina, supra, 915 F.2d at 15 (federal

claim filed in reaction to an adverse ruling in state court action would be defensive tactical maneuver). Such factors thus do not weigh in favor of dismissal in this case.

Finally, courts have looked to the principles of removal jurisdiction for guidance in determining whether the surrender of jurisdiction by a district court is appropriate. See Villa Marina, supra, 915 F.2d at 14 (citing American Int'l Underwriters v. Continental Ins. Co., 843 F.2d 1253, 1260 (9th Cir. 1988) (holding that plaintiffs who have filed a complaint in state court should not be allowed to refile their complaint in federal court because refiling would effectively permit the plaintiff to remove his own action to a federal forum in contravention of 28 U.S.C. § 1441)).[6] Removal of the state court case to federal court was not an option available to Novello, as 28 U.S.C. § 1441(b) bars a defendant from removing a state court action filed

_____

[6]The court notes, however, that both Villa Marina and American Int'l Underwriters invoke removal considerations only in the face of duplicative claims filed by the same plaintiff, and are legally and factually inapposite to the instant case, as the courts therein were interested in discouraging forum shopping. In contrast, in the context where a state court defendant subsequently files a federal action, invocation of removal considerations would only muddy the waters of the Colorado River analysis, and could potentially lead to the denial of a state defendant's right to a federal forum for his claims. See generally 1A James Wm. Moore, et. al., Moore's Federal Practice, ¶ 0.203[4] (2d ed. 1995).

12

against him in his home state.[7]  However, the fact that removal was not available to Novello should not act as a bar to his claims which, though duplicative, are properly before the federal court based on the diverse citizenship of the parties.

In conclusion, after balancing the circumstances of this case under the test established by <u>Colorado River</u> and its progeny in the First Circuit, with the balance weighted heavily in favor of retaining jurisdiction, there appear to be no exceptional circumstances which would justify defendant's request that this court surrender its jurisdiction and dismiss the case. Accordingly, defendant's motion to dismiss must be and herewith is denied.

### 3.  Conclusion

For the reasons set forth herein, defendant's motion to

---

[7]Such statute provides:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).

dismiss (document 16) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 11, 1996

cc:   Karen M. O'Toole, Esq.
      Dennis T. Ducharme, Esq.
      John J. Ryan, Esq.