# United States Court of Appeals

## For the First Circuit

No. 09-1135

SONIA I. JIMÉNEZ; LOURDES MOLINA-DOVAL,

Plaintiffs, Appellants,

v.

LUIS ALFONSO RODRÍGUEZ-PAGÁN; ALIDA RAMONA BINET-MIESES;
CONJUGAL PARTNERSHIP RODRÍGUEZ-BINET; FEDERICO TOMÁS
RODRÍGUEZ-BINET a/k/a Tommy Rodríguez; ISABELA BEACH COURT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Irma R. Valldejuli for appellants.
Mónica I. De Jesús Santana, with whom Fiddler González &
Rodríguez. PSC, was on brief, for appellees.

March 1, 2010

**HOWARD**, <u>Circuit Judge</u>. This case calls on us to navigate the turbulent waters of <u>Colorado River</u> abstention. That doctrine, established in <u>Colorado River Water Conservation District</u> v. <u>United States</u>, 424 U.S. 800 (1976), allows federal courts in limited instances to stay or dismiss proceedings that overlap with concurrent litigation in state court.

The plaintiffs here originally sued in federal district court, asserting diversity jurisdiction. They later commenced an identical action in a Puerto Rico Commonwealth court during what they considered to be a burdensomely long pendency of a motion to dismiss for failure to join an indispensable party. The federal court eventually granted the motion to dismiss, leaving the action in the Commonwealth court to proceed alone. The plaintiffs appealed from the federal dismissal and now ask us to reinstate the diversity suit to its parallel track alongside the ongoing Commonwealth litigation. The defendants argue not only that we should affirm the dismissal for lack of an indispensable party, but also, among other things, that the Commonwealth-court action provides an alternative ground for disposing of the federal case under <u>Colorado River</u>. We conclude that the narrow conditions for <u>Colorado River</u> abstention are met here. We therefore stay the federal proceedings pending the outcome of the Commonwealth-court case.

## I. Background

Since the district court did not reach the merits, we provide a "condensed version of the dispute." Tell v. Trs. of Dartmouth Coll., 145 F.3d 417, 418 (1st Cir. 1998). On December 22, 1998, Manuel Molina-Godinez, the plaintiffs' decedent, sold the defendants 100% of the stock in an apartment complex development known as Isabela Beach Court. Molina-Godinez agreed to manage Isabela Beach Court in exchange for a monthly fee and 18% of the proceeds after the complex's completion and the sale of all units. In addition, before construction began, Molina-Godinez verbally agreed to buy one of the penthouses in Isabela Beach Court for $220,000, and the defendants reserved the unit for him. This agreement was later confirmed in writing. For reasons unspecified at this stage, the defendants dispute the scope and validity of these agreements.

On January 3, 2003, Molina-Godinez died. Construction of Isabela Beach Court was completed at some point after his death and all of the units were sold successfully. On March 27, 2007, Molina-Godinez's widow, plaintiff Sonia I. Jiménez, commenced an action in the federal district court for the District of Puerto Rico asserting that she was entitled to half of her late husband's 18% share, which had never been paid. Additionally, she sought to exercise his option on the penthouse apartment that had allegedly been reserved for him. Because Jiménez was a Florida resident and

-3-

the defendants were all Puerto Rico residents, she claimed that the district court had diversity jurisdiction over the matter.

The defendants moved to dismiss for failure to join an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. They argued that the case could not proceed without Molina-Godinez's three other heirs, two of whom were also Puerto Rico residents. Because joinder of the Puerto Rico heirs would defeat complete diversity, the defendants maintained, dismissal was compulsory.

On August 10, 2007, Jiménez amended the complaint to join the one diverse heir while still excluding the non-diverse heirs. She also altered her theory of the case, explaining that she was now seeking the contractual proceeds on behalf of Molina-Godinez's estate rather than for herself alone. She claimed that she could adequately protect the interests of the non-diverse heirs and that, as a result, the action did not depend on their joinder. The amended complaint asked the court to award any judgment to the estate, where it could be allocated to heirs and creditors by a Puerto Rico probate court at some later date.

The addition of the diverse heir as a named plaintiff did not, however, affect the substance of the defendants' argument. The defendants renewed their motion to dismiss, maintaining that Jiménez was not an adequate representative of the estate and that an adverse judgment could affect the non-diverse heirs' interests.

According to them, neither the case's new posture nor the joinder of the one diverse heir would lessen the indispensability of the non-diverse heirs. The plaintiffs filed their response three days later.

Over six months passed without any further action from the court. On March 27, 2008, the plaintiffs sought to learn the status of the pending motion to dismiss, but the docket does not indicate a response from the court. On August 29, 2008, after an additional five months, the plaintiffs filed a parallel complaint in the Court of First Instance for the Commonwealth of Puerto Rico. Unlike the federal action, this second suit joined all of Molina-Godínez's heirs as parties.

On December 12, 2008, the district court granted the defendants' motion to dismiss. Jiménez v. Rodríguez-Pagán, 254 F.R.D. 151 (D.P.R. 2008). This appeal followed. Meanwhile, the Commonwealth action has progressed in due course and is now into the discovery stage.

## II. Discussion

The defendants-appellees present three different possible grounds to deny appellate relief to the plaintiffs-appellants. First, they argue that this case involves matters that fall within the probate exception to diversity jurisdiction and thus cannot be adjudicated in federal court. Second, they reiterate their Rule 19 claim that the non-diverse heirs remain indispensable. Finally,

they ask us to abstain under Colorado River and allow the Puerto Rico court to resolve the case.  Though we reject the first of these arguments and harbor considerable skepticism as to the second, we ultimately agree that this case warrants Colorado River abstention.[1]

### A. The Probate Exception

It has been said that "[t]he probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction."  Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982).  Once more unto the breach.[2]

The probate exception is a judge-made doctrine stemming from the original conferral of federal equity jurisdiction in the Judiciary Act of 1789.  The ambit of that jurisdiction, coterminous with that exercised by the framers' contemporaries in the English courts of chancery, "did not extend to probate matters."  Markham v. Allen, 326 U.S. 490, 494 (1946).  The Supreme Court accordingly held in Markham that federal courts have no authority to "interfere with the probate proceedings or assume general jurisdiction of the

---

[1]Under different circumstances, we might proceed directly to the dispositive Colorado River analysis, bypassing the other two questions.  In this case, however, a cursory treatment of those questions does not suffice.  Were the probate exception to apply here, we would have no subject matter jurisdiction over this dispute, and we think it appropriate to determine our own jurisdiction at the outset. The Rule 19 issue merits its own analysis because it factors into our eventual determination to abstain.

[2]See William Shakespeare, King Henry the Fifth, act 3, sc. 1.

-6-

probate or control of the property in the custody of the state court." Id.

Yet "stating the probate exception has proven easier than applying it." Umsted v. Umsted, 446 F.3d 17, 20 n.2 (1st Cir. 2006). After Markham, just what would constitute "interfere[nce] with the probate proceedings" proved notoriously difficult to pin down. When we last had the opportunity to consider the doctrine nearly a decade ago, we acknowledged that "the precise scope of the probate exception has not been clearly established." Mangieri v. Mangieri, 226 F.3d 1, 2 (1st Cir. 2000) (internal brackets omitted).

Since then, the Supreme Court has revisited the issue and illuminated matters somewhat. In Marshall v. Marshall, the Court explained that

> the "interference" language in Markham [is] essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

547 U.S. 293, 311-12 (2006) (citations omitted). Marshall made clear that the scope of the probate exception is "distinctly

limited." Id. at 296; cf. Mooney v. Mooney, 471 F.3d 246, 248 (1st Cir. 2006) (noting that the Supreme Court in Marshall also emphasized the narrow scope of the domestic relations exception).

The case before us does not fall within that limited scope. "[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007). The only property at issue in this case is the proceeds from the sale of the Isabela Beach Court units and the penthouse apartment on which Molina-Godinez allegedly held an option to purchase. Because neither the money nor the apartment are yet part of the decedent's estate, neither are yet in the custody of a Puerto Rico probate court. Indeed, the very relief sought here is enlargement of the decedent's estate through assets not currently within it. While divvying up an estate falls squarely within the probate exception, merely increasing it does not. Gustafson v. zumBrunnen, 546 F.3d 398, 400 (7th Cir. 2008) (finding that the probate exception did not apply because "the judgment sought would just add assets to the decedent's estate" rather than "reallocat[ing] the estate's assets among contending claimants or otherwise interfer[ing] with the probate court's control over and administration of the estate").

## B. Rule 19

We review a district court's Rule 19 determinations for abuse of discretion. Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 14-15 (1st Cir. 2008). Because the decision to dismiss for lack of an indispensable party "involve[s] the balancing of competing interests and must be steeped in pragmatic considerations," id. at 14 (internal quotation marks omitted), we will reverse only if "the district court makes an error of law or relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors." Id. at 15 (internal citations and quotation marks omitted).

Rule 19 is designed to protect the interests of parties who are not yet involved in ongoing litigation. To measure how critical those interests are, the rule instructs courts to engage in a two-part analysis. See Pujol v. Shearson Am. Exp., Inc., 877 F.2d 132, 134 (1st Cir. 1989). Parties should be joined, when feasible, if they are "necessary" to the action according to the criteria laid out in Rule 19(a).[3] If a necessary party cannot be

---

[3]The term "necessary" is a vestige of a superseded version of Rule 19 and no longer appears in the text. Rule 19(a) now speaks only of "Persons Required to be Joined if Feasible." Nevertheless, many circuits (including this one) continue to cling to the traditional nomenclature. See Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1501 n.1 (9th Cir. 1991) (O'Scainnlain, J., concurring in part and dissenting in part). Lest there be any confusion, the word is used as a term of art and signifies desirability rather than actual necessity. Parties are not truly necessary in the vernacular sense of the word "unless and until they satisfy the terms of Rule 19(b)." Id.

joined in the action without divesting the court of subject-matter jurisdiction, Rule 19(b) lays out additional criteria for determining whether that party is "indispensable." If the court finds that party is anything less than indispensable, the case proceeds without her. If, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case. See B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 23 (1st Cir. 2008).

Ultimately, the unsettled state of governing Puerto Rico law hampers our ability to adjudicate this issue definitively. Assuming for the purposes of argument that the district court exercised its discretion properly in finding that the non-diverse heirs were necessary parties under Rule 19(a), we proceed directly to the indispensability analysis under Rule 19(b). See Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 n.2 (1st Cir. 1998) (per curiam) (noting that parties cannot be indispensable under Rule 19(b) unless they are first deemed necessary under Rule 19(a)). The "critical question" in the Rule 19(b) context is "'whether in equity and good conscience' the action may proceed in [the necessary party]'s absence." B. Fernandez, 516 F.3d at 23 (quoting Fed. R. Civ P. 19(b)). To answer that question, the district court must consider four factors specified in the Rule:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person person or the existing parties; (2) the extent to which any prejudice could be

-10-

lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).

The district court emphasized the first and third factors, finding that a judgment rendered in the non-diverse heirs' absence could potentially prejudice their interests. It reasoned that since each heir possesses a right to part of Molina-Godinez's estate, any ruling on the sums due to the estate under the alleged contract would affect each heir's individual portion. In order to adequately protect his or her interest in that portion, each heir was therefore entitled to participate in the litigation, even to the point of eliminating federal diversity jurisdiction.

We are not so sure. In Puerto Rico, the decedent's as-yet undivided estate is known as a community of property. See, e.g., Arias-Rosado v. Gonzalez Tirado, 111 F. Supp. 2d 96, 99 (D.P.R. 2000). On several occasions, the federal district court for the District of Puerto Rico has interpreted Puerto Rico law to provide that an individual participant in a community of property does not impair other participants' interests merely by asserting common legal rights to the property while the other participants are absent. "Any judgment in favor of one or more participants benefits all other participants in a community of property whereas

an adverse judgment only prejudices the one who filed the judicial action." Id. (internal quotation marks omitted); accord Rodriguez-Rivera v. Rivera Rios, No. 06-1381, 2009 WL 564221, at *3 (D.P.R. Mar. 5, 2009); Ruiz-Hance v. P.R. Aqueduct & Sewer Auth., 596 F. Supp. 2d 223, 230 (D.P.R. 2009); Cintron v. San Juan Gas, 79 F. Supp. 2d 16, 19 (D.P.R. 1999). In Arias-Rosado, a Rule 19 challenge to a survivorship action, the court went on to hold that "a favorable judgment to [the individual heir litigating in federal court] will be dispositive of the survivorship claim and benefit the absent heirs. However, an unfavorable judgment will only prejudice her and not the absent heirs[,] who still will have available the suit filed in state court wherein they asserted the survivorship claim." 111 F. Supp. 2d at 99; see also Rodriguez-Rivera, 2009 WL 564221 at *3; Ruiz-Hance, 596 F. Supp. 2d at 229-30; Cintron, F. Supp. 2d at 19.

Taking these cases at face value, as the plaintiffs urge us to, it appears that the federal suit here is something of a free shot for the non-diverse heirs. Success inures to their benefit while failure is costless. Surely there can be no impairment when they stand to lose nothing. If the plaintiffs are providing a correct statement of the local law, they would appear to be the best of all possible representatives for the absentees' interests: the kind that may very well help but cannot hurt. See Tell, 145 F.3d at 419 ("If an absent party's interests are the same as those

-12-

of an existing party, and the existing party will adequately protect those interests, this bears on whether the absent party's interest will be impaired by its absence from the litigation.").

At this juncture, however, we cannot state this proposition as anything other than a conditional hypothetical. The plaintiffs' interpretation of Puerto Rico community property law is far from certain. To begin with, the cases on which the plaintiffs rely sound exclusively in tort. Seizing on this, the defendants have urged us to limit the applicability of those cases to wrongful death and survivorship actions. When pressed at oral argument, the plaintiffs could not cite a single authority suggesting that their interpretation of the relevant law extends to contract claims.

This puts us in an awkward position. On the one hand, we would find it somewhat strange if the rule did indeed govern non-torts actions yet had failed to produce any reported decisions to that effect. It is hard to say that the district court abused its discretion when the ostensible abuse is a matter of unsettled law. On the other hand, none of the four cases that the plaintiffs cite facially limits itself to tort claims. Those cases draw their logical force not from any idiosyncrasy in Puerto Rico's tort law, but from Puerto Rico's community-of-property law. This may make the defendants' argument a good candidate for a distinction without a difference. Contractual proceeds due to the decedent belong to the undivided estate just as much as a wrongful death judgment.

-13-

All things considered, we have an insufficient basis to accept either the plaintiffs' or the defendants' readings of the case law.

A second difficulty remains. Suppose that the plaintiffs here are successful in securing some monetary damages under the contract, but not the full amount that they seek. Does that constitute a successful judgment sufficient to bind the non-diverse heirs under the plaintiffs' theory of the law, or is it instead an adverse judgment that would leave those heirs free to double down in the second suit? The plaintiffs do not attempt to answer this question, and, unaware of any authority one way or the other, neither can we.

In sum, we are ill equipped to rule on this question of Puerto Rico law. As this question may very well determine the non-diverse heirs' indispensability here, we are equally ill equipped to rule on the ultimate question of joinder. Under different circumstances, we would consider certifying the underlying question to the Supreme Court of Puerto Rico. See Muniz-Olivari v. Stiefel Labs., Inc., 496 F.3d 29, 39-40 (1st Cir. 2007). As the next section makes clear, though, that consideration is obviated by the parallel litigation ongoing in the Commonwealth court.

## C. Colorado River Abstention

It has long been established that the presence of parallel litigation in state court will not in and of itself merit abstention in federal court. See McClellan v. Carland, 217 U.S.

-14-

268, 282 (1910); <u>Stanton</u> v. <u>Embrey</u>, 93 U.S. 548, 554 (1876). Concurrent federal-state jurisdiction over the same controversy does not generally lessen the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Colo. River</u>, 424 U.S. at 817. At the same time, the Supreme Court in <u>Colorado River</u> acknowledged that this obligation is not infinite. In special cases, the pendency of a similar action in state court may merit federal abstention based on "considerations of wise judicial administration" that counsel against duplicative lawsuits.[4] <u>Id.</u> (internal brackets and quotation marks omitted). This "fourth category" of abstention has come to be known as the <u>Colorado River</u> doctrine.[5] <u>See</u> <u>Fuller Co.</u> v. <u>Ramon I. Gill, Inc.</u>, 782 F.2d 306, 309 n.3 (1st Cir. 1986) (observing that <u>Colorado River</u> created a fourth category of abstention beyond the "three traditional branches").

---

[4]As with other forms of abstention, our decision to decline jurisdiction under <u>Colorado River</u> may be sua sponte. <u>See</u> <u>Bellotti</u> v. <u>Baird</u>, 428 U.S. 132, 143 n.10 (1976); <u>Guillemard-Ginorio</u> v. <u>Contreras-Gomez</u>, 585 F.3d 508, 517-18 (1st Cir. 2009); <u>Currie</u> v. <u>Group Ins. Comm'n</u>, 290 F.3d 1, 9 n.7 (1st Cir. 2002). We therefore have discretion to review the matter on appeal even if it was not raised in the court below.

[5]The first three forms of abstention are <u>Pullman</u>-type (avoiding a constitutional determination by allowing a state court to construe state law), <u>Burford</u>-type (deferring to a state regarding difficult questions of state law that involve significant policy considerations), and <u>Younger</u>-type (invoking federal jurisdiction to restrain criminal proceedings). <u>See</u> <u>Colo. River</u>, 424 U.S. at 814-17; <u>Villa Marina Yacht Sales, Inc.</u> v. <u>Hatteras Yachts</u>, 915 F.2d 7, 12 n.8 (1st Cir. 1990).

The crevice in federal jurisdiction that <u>Colorado River</u> carved is a narrow one. Of all the abstention doctrines, it is to be approached with the most caution, with "[o]nly the clearest of justifications" warranting dismissal. <u>Colo. River</u>, 424 U.S. at 819. Our authority to find such a clear justification is confined by an "exceptional-circumstances test," <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 16 (1983), whose non-exclusive list of factors we have drawn from <u>Colorado River</u> and its progeny:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

<u>Rio Grande Cmty. Health Ctr.</u> v. <u>Rullan</u>, 397 F.3d 56, 71-72 (1st Cir. 2005). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." <u>Colo. River</u>, 424 U.S. at 818-19. Furthermore, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." <u>Moses</u>

H. Cone, 460 U.S. at 16. Unsurprisingly, the cases that satisfy this test are few and far between.

Yet those cases, "though exceptional, do nevertheless exist." Colo. River, 424 U.S. at 818. From time to time, we have exercised our discretion (or affirmed the lower court's exercise of its own discretion) to decline jurisdiction under Colorado River, notwithstanding the presumption in favor of assuming jurisdiction. See, e.g., Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50 (1st Cir. 2006); Currie v. Group Ins. Comm'n, 290 F.3d 1 (1st Cir. 2002); Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475 (1st Cir. 1985).

In our view, this is such a case. Applying the factors, we conclude that while some are neutral to our inquiry, the balance of them strongly favors abstention. We begin with the neutral factors, which may be summarized quickly. The federal and Puerto Rico forums are equally convenient (second factor); the Puerto Rico forum is well equipped to protect the parties' interests (sixth factor), see United States v. Fairway Capital Corp., 483 F.3d 34, 43 (1st Cir. 2007) (holding that the adequacy of the state forum is relevant only when it would disfavor abstention); there is nothing vexatious or contrived about the plaintiffs' federal lawsuit (seventh factor); and removal jurisdiction is irrelevant here (eighth factor).

So far, so good.  But the sum of the other four factors convinces us that deference to the Commonwealth court is the appropriate result here.  The first factor, the involvement of a res, tilts toward abstention due to the plaintiffs' claim for the penthouse apartment in Isabela Beach Court.  Though the plaintiffs characterize this as a suit over monetary damages, both versions of the complaint request the court to enforce the decedent's alleged option on the apartment. There is therefore a possibility for inconsistent dispositions of property.[6]

The third factor, avoidance of piecemeal litigation, also favors abstention, although it requires a bit more explanation. The "piecemeal litigation" to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating Colorado River doctrine.  Concurrent federal-state

---

[6]In Levy v. Lewis, the Second Circuit observed that the res prong of the Colorado River analysis was more concerned with the disposition of property than the actual exercise of in rem jurisdiction:

> The principle is often stated as a matter of jurisdiction: that a second court cannot have jurisdiction to proceed in rem if jurisdiction over the res is maintained by another court. Nevertheless, as the Court appeared to recognize, the principle involved is more accurately described as a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court for the sake of comprehensive disposition of rights in a particular piece of property or in a fund.

635 F.2d 960, 965-66 (2d Cir. 1980).  We agree with this assessment.

-18-

jurisdiction over the same action will necessarily involve some degree of "routine inefficiency that is the inevitable result of parallel proceedings." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990). That inefficiency was not significant to the Supreme Court's decision in Colorado River and has not contributed to any of this circuit's subsequent case law. Were it otherwise, courts could abstain in any diversity action that overlapped with a state-court action. "Piecemeal litigation" must instead refer to some additional factor that places the case beyond the pale of duplicative proceedings. Put differently, "[a] duplication of effort, while wasteful, is not exceptional." Gentron Corp. v. H. C. Johnson Agencies, Inc., 79 F.R.D. 415, 418 (E.D. Wis. 1978).

> We have therefore held that
>
> > [d]ismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. Rather, concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.

KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10–11 (1st Cir. 2003) (internal quotation marks and citations omitted). The canonical example of such an exceptional basis is a clear federal policy in favor of unified proceedings pursuant to a federal

-19-

statute that is at issue in the case.  See Colo. River, 424 U.S. at 819-20 (finding abstention appropriate because the federal law at issue evinced a clear policy against piecemeal adjudication of river system water rights); cf. Moses H. Cone, 460 U.S. at 20 (finding abstention inappropriate because the Federal Arbitration Act requires piecemeal litigation if necessary to give effect to an arbitration agreement).  But there are other reasons why the piecemeal litigation factor might loom large in a given case.  On multiple occasions, we have found an exceptional basis that counsels in favor of abstention, even though no particular federal policy was in play.  See, e.g., Rivera-Feliciano, 438 F.3d at 50 (holding that "in light of the many underlying unresolved issues of Puerto Rican law[,] it would be better to avoid piecemeal litigation"); Currie, 290 F.3d at 10 (finding a risk of piecemeal litigation that rises above routine inefficiency where parallel state-court case was already on appeal and involved an issue of state law which could moot or otherwise inform the federal litigation); Liberty Mut. Ins. Co., 751 F.2d at 477 (finding an exceptional basis where there existed a "real possibility" that an insurance policy might be interpreted differently in each forum, leaving the insured with insufficient coverage after years of paying premiums).

We think the potential implications of proceeding in federal court without the non-diverse heirs provides the requisite

exceptional basis here. The absence of the additional heirs in the federal action means that in all likelihood the district court would be unable to resolve the defendants' contractual liability to them if the case is allowed to continue. The district court could determine the defendants' obligations to the diverse heirs, but the defendants would need to look to the Commonwealth court to determine their obligations to the non-diverse heirs under the same contract. The Commonwealth action, by contrast, includes all of the heirs and can therefore comprehensively adjudicate the defendants' liability. This disparity in inclusiveness thus creates a greater practical risk of piecemeal litigation than the baseline inefficiencies of the average exercise of concurrent federal-state jurisdiction. Recognizing this, other circuits have found Colorado River abstention more appropriate when non-diverse parties are joined in the state-court action but not the federal action. See Sto Corp. v. Lancaster Homes, Inc., 11 F. App'x 182, 188 (4th Cir. 2001); Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc., 48 F.3d 294, 298 (8th Cir. 1995); Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1373 (9th Cir. 1991), overruled on other grounds, Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998). We agree. This potential for fragmented adjudication, to be distinguished from merely duplicative

-21-

adjudication, warrants consideration in the <u>Colorado River</u> analysis.[7]

We move next to the fifth factor, whether state or federal law controls, which weighs particularly heavily here. Not only does the dispute here turn entirely on issues of Puerto Rico law, <u>see</u> <u>Liberty Mut. Ins. Co.</u>, 751 F.2d at 477 (finding it significant that "no federal issues are raised . . . and no federal interest would be served by retaining jurisdiction over the case"), but the issues that would inform our jurisdictional analysis remain unsettled. We have previously held that under this part of the exceptional-circumstances test, abstention may be preferable when the "parties' claims present particularly novel, unusual or difficult questions of legal interpretation." <u>Elmendorf Grafica, Inc.</u> v. <u>D.S. Am. (East), Inc.</u>, 48 F.3d 46, 52 (1st Cir. 1995); <u>accord</u> <u>KPS & Assocs.</u>, 318 F.3d at 11. As we described above, the plaintiffs' ability to maintain complete diversity in this case hinges on our Rule 19 analysis. That analysis, in turn, hinges in part on the question of whether the non-diverse heirs' interests could be impaired if they are not joined as parties to the suit. We cannot intelligently answer that question without some clear indication as to whether Puerto Rico courts would apply the

---

[7]To be sure, it may not weigh as strongly as a clear federal policy of the sort that was considered in <u>Colorado River</u>, but it at least diminishes the presumption in favor of exercising federal jurisdiction.

plaintiffs' proposed community-of-property rule to causes of action other than tort claims. From our vantage point, we cannot say definitively one way or the other. The local law that would underlie our determination on compulsory joinder would be best left to the Puerto Rico courts to sort out.[8]

The sixth factor, the order in which the courts obtained jurisdiction, similarly points toward abstention. The label for this factor is something of a misnomer, as "the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction." Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991). "[T]he order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the Colorado River balancing is being done." Elmendorf, 48 F.3d at 52. We thus "measure which action -- the suit in the federal court or that in the state court -- is the more advanced in a 'pragmatic, flexible manner, with a view to the realities of the case at hand.'" Id. (quoting Moses H. Cone, 460 U.S. at 21). A quick comparison of the two docket sheets at issue here reveals that while the federal action foundered on jurisdictional questions, leaving only this appeal, the

_____

[8]Because the Commonwealth action includes the non-diverse heirs, this question is not likely at issue there. Our deferral therefore means that the question will not be resolved until a future case. We think this delay is still preferable to our attempting to settle a state-law question of first impression here.

-23-

Commonwealth action is already well into the discovery stage.[9]  The
Commonwealth's head start into the merits lessens the federal
court's need to exercise jurisdiction.  See Colo. River, 424 U.S.
at 820 (stating that an absence of any federal proceedings beyond
a motion to dismiss favors the surrender of jurisdiction).

Considering all of these factors, we conclude that this
is one of the rare instances meriting Colorado River abstention.
Because of the possibility for inconsistent dispositions of a res,
the heightened potential for piecemeal litigation, the exclusive
reliance on Puerto Rico law, the unsettled nature of aspects of
that law that would inform our jurisdictional analysis, and the
more advanced progress of the litigation in the Puerto Rico court
system, we are convinced that the wisest judicial administration of
this case is to defer to the judgment of the Puerto Rico court.

---

[9]Neither the parties nor, apparently, the Court of First
Instance's Spanish-language docket specify how close to trial the
Puerto Rico case actually is.  Yet a significant disparity in favor
of the Commonwealth court is clear enough.  As the Seventh Circuit
recently observed in an analogous situation, "[a]lthough the
precise status of discovery is not apparent from the record before
us, it is clear that various depositions have been taken in the
state case.  At the very least, the controversy appears to be
closer to a resolution in the state proceedings than in the
federal." Tyrer v. City of South Beloit, 456 F.3d 744, 755 (7th
Cir. 2006) (internal brackets and quotation marks omitted).  Since
a court engaging in Colorado River analysis should "look at the
total situation as it stands at the time of appeal," Lumen Const.,
Inc. v. Brant Const. Co., Inc., 780 F.2d 691, 697 n.4 (7th Cir.
1985), we take judicial notice of the progress of the parallel
Commonwealth litigation.

Having come to this conclusion, we must next decide whether the appropriate disposition is a dismissal or a stay of the proceedings. In Moses H. Cone, the Supreme Court committed this question to the discretion of the lower courts, finding "no occasion in this case to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that Colorado River counsels in favor of deferring to a parallel state-court suit." 460 U.S. at 28 (footnote omitted); see also Arizona v. San Carlos Apache Tribe of Ariz., 463 U.S. 545, 570 n.21 (1983). Most circuits to have considered the issue have held that a stay is always preferable because it may likely produce the same practical result as a dismissal while still leaving the docket open in case loose ends remain at the conclusion of the state proceedings. See Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 998 (11th Cir. 2004); Cigna Healthcare of St. Louis, Inc. v. Kaiser, 294 F.3d 849, 851-52 (7th Cir. 2002); Mahaffey v. Bechtel Assoc. Prof'l Corp., D.C., 699 F.2d 545, 546-47 (D.C. Cir. 1983) (per curiam); see also Lops v. Lops, 140 F.3d 927, 960 n.24 (11th Cir. 1998) (Kravitch, J., dissenting); but see Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd., 669 F.2d 940, 943 (4th Cir. 1982) (holding that dismissal is appropriate so long as "the determinative issues will unfailingly be resolved within the

-25-

parameters of the state-court litigation . . . as no further action by the district court is anticipated").

There is no need to decide this issue categorically here. In this Circuit, <u>Colorado River</u> abstention has historically resulted in a stay, <u>see, e.g.,</u> <u>Rivera-Feliciano</u>; <u>Currie</u>; <u>Liberty Mut. Ins. Co.</u>, and we elect to continue that trend in this case. Although we do not anticipate any unresolved issues remaining after the Commonwealth case concludes, we see no harm to judicial economy in going the more cautious route. <u>See</u> <u>LaDuke</u> v. <u>Burlington N. R.R. Co.</u>, 879 F.2d 1556, 1562 (7th Cir. 1989) (noting that a stay "protects the rights of all the parties without imposing any additional costs or burdens on the district court") (footnote omitted).

## III. Conclusion

Like the district court, we think that this case should ultimately be resolved in the Puerto Rico judicial system. But we reach this conclusion not because of the probate exception or Rule 19, but rather because of exceptional circumstances that satisfy <u>Colorado River</u>'s demanding test for abstention. Accordingly, we <u>vacate</u> the district court's dismissal and <u>remand</u> with instructions to stay all further proceedings.

<u>It is so ordered</u>. Costs to neither party.