# United States Court of Appeals
## For the First Circuit

Nos. 10-1728; 10-1945

MAYDA NAZARIO-LUGO,

Plaintiff, Appellant,

v.

CARIBEVISIÓN HOLDINGS, INC.,
a/k/a C.V. Networks, a/k/a Caribe Vision Station Group, LLC,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, <u>U.S. District Judge</u>]

Before

Lipez, <u>Circuit Judge</u>,
Souter, <u>Associate Justice</u>,[*]
and Howard, <u>Circuit Judge</u>.

<u>Judith Berkan</u>, with whom <u>Mary Jo Méndez</u> was on brief, for appellant.
<u>Ineabelle Santiago Camacho</u>, with whom <u>Rafael Escalera Rodriguez</u>, <u>Amelia Caicedo Santiago</u>, <u>Viviana Berrios Gonzalez</u> and <u>Reichard & Escalera</u> were on brief, for appellee.

February 24, 2012

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**HOWARD**, **Circuit Judge**.  This diversity action involves an ordinary contract dispute between the appellant, Mayda Nazario-Lugo ("Nazario"), and her former employer, appellee Caribevisión Holdings, Inc.  Nazario challenges the district court's decision to dismiss without prejudice her federal complaint in deference to litigation pending in the Commonwealth of Puerto Rico.  See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  We hold that this case does not present the extraordinary circumstances required under the Colorado River doctrine to clearly justify the surrender of federal jurisdiction.  Therefore, we reverse the judgment dismissing the action, and remand for further proceedings.

## I. Background

The facts, which are undisputed unless otherwise indicated, may be sketched from the district court's order, the parties' pleadings, and other documents in the record.

Caribevisión operates several television broadcasting stations in Puerto Rico.  In February 2008, Caribevisión entered into a five-year contract with Nazario, employing her as president, general manager, and sales director for its Puerto Rico operations. Article 3 of the contract sets forth Nazario's compensation and benefits, including details of her salary, bonus, commission, health insurance and expense allowance.

Article 4 of the contract governs several scenarios for early termination. For instance, it identifies the monies Caribevisión would be bound to pay Nazario if it terminated the agreement "for cause" or, by contrast, if Nazario ended her employment "for good reason," as defined in the contract. Article 4 also establishes procedures that each party is bound to follow in a given termination scenario. Pertinent here, Article 4.05 entitled "General Release" provides: "Except where the termination is the result of [Nazario's] death and notwithstanding the foregoing, no payment shall be made by the Company to [Nazario] under this Section 4 unless otherwise required by state, local or federal law, until [Nazario] executes a general release of all claims in a form reasonably approved by the Company."[1]

The parties' relationship began to deteriorate in 2009, at least from Nazario's perspective. After on-going disagreements, Nazario notified the company in June through a letter from her attorney that she intended to terminate the contract for "good reason" if Caribevisión did not rectify certain breaching conduct. Among the alleged breaches, Nazario pointed to the company's

_____

[1] Article 6.03 provides in part: "This Agreement supercedes any and all other agreements, either oral or in writing, between the parties . . . and contains all of the covenants and agreements between the parties with respect to the employment. . . . Any modification of this Agreement will be effective only if it is in writing and signed by the party to be charged." The parties later altered some discrete terms of the contract by written agreement.

-3-

failure to pay her commissions and work-related expenses to which she was entitled. She also identified several "good reasons" unrelated to Article 3 financial obligations, such as the company taking actions that diminished her effective authority and impeded her ability to carry out her responsibilities. She communicated her intent to pursue litigation if the company did not honor its contractual obligations. In its response letter, Caribevisión denied some of the allegations but agreed that it owed her certain "accrued expenses and benefits." The letter conditioned payment of the acknowledged claims on her execution of a release under Article 4.05.

The parties scheduled a meeting for early September to discuss their differences, but Caribevisión cancelled it. Nazario then notified the company in a letter dated September 11, that she was terminating the contract "for good reason," and she identified her last day of work as September 16. In the letter, she disputed the company's stance that she was required to sign a release prior to collecting her Article 3 compensation pay. Nazario expressed her willingness, however, to sign a release to receive termination pay under Article 4.04, the "good reason" termination section, and requested that the company draft one. She invited a meeting within a defined time frame, seeking resolution without litigation.

Days later, the company notified Nazario that it was terminating the contract "for cause," and filed a declaratory

-4-

judgment action in a Puerto Rico Commonwealth court. It requested that the local court declare the company's right, pursuant to Article 4.05, to require Nazario to sign a release of liability before it distributed any payment to her, and order her to do so. It also averred that "it ha[d] always been willing to pay the unpaid sums claim[ed] by Attorney Nazario" and deposited with the court about $51,000 as the purported sum due.

In her answer, Nazario distinguished between compensation pay under Article 3 and termination pay under Article 4, and took the position that only payment for the latter was conditioned on an Article 4.05 release. She requested that the court issue a decision in line with this distinction. The parties both sought payment for costs, expenses and attorney's fees, as outlined under the contract.

In December 2009, while the Commonwealth court action was pending, Nazario filed a breach of contract action in federal court, invoking diversity jurisdiction. Her suit sought payment both for Article 3 compensation and for Article 4 termination pay, as well as an award of costs, attorneys' fees and interest. In short order, she filed a motion for partial summary judgment to establish, among other things, the company's liability for both payment types -- about $57,500 for Article 3 compensation pay and close to $730,000 for Article 4 "good reason" termination pay. For purposes of the motion, she limited the "good reason" basis for her

contract termination to the company's breach of its Article 3 financial obligations, rather than any other company misconduct identified in her federal complaint.  The company objected and also filed a motion to dismiss the federal action on abstention grounds under Colorado River, to which Nazario timely objected.

In April 2010, the district court granted the motion to dismiss without prejudice while the local action was still pending.  It also denied as moot several pending motions, including Nazario's motion for partial summary judgment.  The district court later denied her motion for reconsideration.

The following month, the Commonwealth court issued its decision in the declaratory judgment action, concluding that "under the clear terms of the agreement Caribevisión had no justification whatsoever to demand that a release be signed under clause 4.05 of the employment agreement, as a condition for [Nazario] receiving the amounts owed [under Article 3]."[2]  Nazario, in turn, filed another motion in federal court asking it to set aside its judgment

---

[2] The local court awarded Nazario $500.00 for costs and attorneys' fees pursuant to a contract term requiring such expenses in the event litigation was necessary to enforce or interpret the parties' agreement.  It also remarked:  "It is the court's view that Ms. Nazario complied with the provisions of clause 4.04 of the employment agreement, so that her request for termination of the agreement for 'good reason' or just cause is valid." While the parties have indicated that Caribevisión has appealed the Commonwealth decision, we have received no further information on the status of that appeal.

of dismissal in light of the local court judgment.  The district court denied this motion as well.  This appeal followed.[3]

## II. Governing Law

We have explored the contours of the Colorado River abstention doctrine before and need not survey its full terrain here.  See Jiménez v. Rodríguez-Pagan, 597 F.3d 18, 27-30 (1st Cir. 2010).  Instead, we underscore a few central points before turning to the particulars at hand.

To begin, there is nothing unusual about parallel litigation resolving similar controversies in both state and federal court.  Admittedly, twin litigation may result in some measure of inefficiency and wasted resources, and there is some risk of inconsistent decisions from different courts on the same or similar issues.  See id. at 29; KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003).  Nevertheless, federal courts must abide by their "virtually unflagging obligation" to exercise their lawful jurisdiction and resolve the matters properly before them.  Colo. River, 424 U.S. at 817; see Burns v. Watler, 931 F.2d 140, 145 (1st Cir. 1991) (relying on Cohens v. Virginia, 19 U.S. 264 (1821) to emphasize the longstanding federal court duty to decide a controversy properly within its jurisdictional

---

[3] The appellant separately appealed both the court's original dismissal order and its decision rejecting her motion to set aside the dismissal judgment.  This opinion primarily involves the dismissal judgment.

authority).  This duty, however, is not absolute, and departure from it is permitted "in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (internal quotation marks omitted).

Over time, categories of cases have emerged illustrating when abstention may be appropriate.  See id. at 716-19 (reviewing various types of special circumstances that justify deference to state court); Colo. River, 424 U.S. at 813-19 (outlining circumstances that warrant federal abstention).  These include the traditional categories of abstention known as Pullman-, Burford- and Younger-type cases.  See Jiménez, 597 F.3d at 27 n.4; see also Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005) (remarking that while the categories of special cases are not hard and fast, their boundaries "do matter").  This case involves a fourth circumscribed category of cases, those falling under the Colorado River doctrine.  This doctrine is to be used sparingly and approached with great caution.  See Colo. River, 424 U.S. at 817-18; Jiménez, 597 F.3d at 27; Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995).  The crux of the Colorado River doctrine is the presence of "exceptional" circumstances displaying "the clearest of justifications" for federal deference to the local forum in the interest of "wise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation." Colo.

River, 424 U.S. at 817-19.[4]

An evolving list of factors exists to aid in discerning whether a particular case involves exceptional circumstances that tip a scale heavily weighted in favor of the exercise of federal jurisdiction. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 15-16 (1983); Jiménez, 597 F.3d at 27-28. So far, the list includes:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jiménez, 597 F.3d at 27-28 (brackets omitted); see Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002) (remarking that the non-exhaustive list is not a "litmus test" and "must remain a

---

[4] Relying on the Colorado River doctrine to dismiss a federal action seeking contract damages may be questionable. See Quackenbush, 517 U.S. at 730 (holding that the district court erred in remanding to state court, under Burford, a common-law suit for contract and tort damages, in part because an abstention-based dismissal historically has been appropriate only where a federal court was sitting in equity; the Supreme Court declined to consider whether an abstention-based stay order would have been proper). We need not consider the implications of Quackenbush here because the parties do not raise any law versus equity distinction, and this case does not present the extraordinary circumstances necessary to justify application of the Colorado River doctrine in any event.

-9-

discretionary tool"). The weight to be given any given factor depends on the circumstances at hand. See Moses H. Cone, 460 U.S. at 16.

In the end, we must determine whether the district court abused its discretion. "[T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance. Yet to say that the district court has discretion is not to say that its decision is unreviewable; such discretion must be exercised under the relevant" exceptional circumstances test enunciated in Colorado River. Id. at 19; see United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007); cf. Sevigny v. Employers Ins. of Wausau, 411 F.3d 24, 26-27 (1st Cir. 2005) (noting that "decisions on abstract issues of law are always reviewed de novo; and the extent of deference on 'law application' issues tends to vary with the circumstances" (internal quotation marks and brackets omitted)).[5] It is enough here to underscore that a decision to yield federal jurisdiction under the Colorado River doctrine must rest on the clearest of justifications

---

[5] See, e.g. Elmendorf Grafica, Inc., 48 F.3d at 50 (explaining constraints of the district court's discretionary judgment in applying the Colorado River doctrine); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533-34 (1st Cir. 1991)(reviewing the vexatious litigation factor under the Colorado River doctrine for clear error); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir. 1990) (vacating the district court's Colorado River abstention decision because it failed to apply the proper balancing test, and remanding for a new decision).

-10-

displayed by exceptional circumstances.  See Moses H. Cone, 460 U.S. at 25; Colo. River, 424 U.S. at 818-19.  Now, we turn to the merits.

### III. Analysis

The district court rested its dismissal order primarily on three abstention factors:  the interest in avoiding piecemeal litigation; the progress of the Commonwealth case; and the governance of local law over the parties' contract dispute.  The court gave some additional weight to the local court's receipt of monies accompanying the declaratory judgment action, but deemed the remaining factors neutral to its analysis -- namely, the geographical inconvenience of the federal forum, the adequacy of the protection afforded by the local forum, the vexatious or contrived nature of the federal claim, and respect for the principles underlying removal jurisdiction.

Nazario argues that the district court exceeded its discretion in its application of the Colorado River factors to this case.  We agree, and our analysis of the factors can be fairly swift.

### Piecemeal Litigation

The district court weighted the piecemeal litigation factor heavily in favor of abstention.  In its view, the local court's resolution of Caribevisión's declaratory judgment action would render moot Nazario's federally filed breach of contract

-11-

claim because of the identity of the issues in the two actions. Relying on our decision in Currie, 290 F.3d 1, the court concluded that resolution of the federal action would be akin to rendering an advisory opinion, a circumstance favoring the yield of federal jurisdiction in deference to the Commonwealth court. Currie, however, has little bearing on this case.

Weight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an exceptional basis for surrendering federal jurisdiction, such as a clear competing policy or some special complication. See Jiménez, 597 F.3d at 29 (collecting cases illustrating sufficient exceptional basis to give weight to the piecemeal litigation factor). In Currie, for example, we stayed resolution of the federal appeal in deference to a parallel case pending in the state court system partly to avoid rendering an advisory opinion. See Currie, 290 F.3d at 9-13. But the extraordinary circumstances there differed greatly from those in this case.

Briefly summarized, Currie involved (1) two federal constitutional claims which the court was not inclined to resolve if the federal statutory claim was dispositive, (2) the entanglement of the federal statutory claim with a complex issue of unsettled state law that was pending in the parallel local litigation, and (3) an underlying subject matter in which the state

-12-

had unusually strong interests, namely, state-provided insurance benefits. See id. at 10. In stark contrast, Nazario's federal action involves a simple contract dispute requiring application of settled local law. The parallel actions here trigger, at most, only routine risks presenting no occasion to animate the piecemeal litigation factor. See, e.g., KPS & Assocs. , Inc., 318 F.3d at 11 (holding that parallel litigation on straightforward contract dispute with primary importance only to the immediate parties did not provide any weight for the piecemeal litigation factor).[6]

**Progress of Litigation**

The district court also determined that the progress of the litigation in the Commonwealth court counseled in favor of abstention. The court stated that it was "satisfied that the parties have proceeded in the earlier case to the point where the Commonwealth court can disburse proceeds upon adjudication on the merits," and that "[t]he Commonwealth court already has in its possession the means to resolve a substantial portion of the relief [Nazario] demands." Setting aside the court's view of the relief available to Nazario in the local forum, it also was required to

---

[6] We are doubtful that the issues in the two courts necessarily were identical. In any event, the district court took a somewhat different approach in its subsequent orders rejecting Nazario's motions for reconsideration and to set aside the dismissal order. There, it emphasized Nazario's fair opportunity to raise her side of the contract dispute in the local forum. Whether or not the availability of the local venue may be relevant to the exceptional-circumstances mix, mere availability, standing alone, does not tip the scale. See Colo. River, 424 U.S. at 814.

consider the comparable progress of the federal litigation.  See Moses H. Cone, 460 U.S. at 21-22 (holding that the chronology factor focuses not only on the order in which the suits were filed, but also on the comparable progress of the litigation in each forum); Jiménez, 597 F.3d at 30 (discerning the procedural status of each suit in order to compare their relative progress).  Engaging in this exercise demonstrates that the progress of the litigation factor is a neutral one.

The federal docket shows that by the time that the district court dismissed the federal action on April 15, 2010, it had before it Nazario's motions for partial summary judgment and for default.  These two dispositive motions were essentially ripe for decision, and granting either of them would have resolved liability and potentially some of the damages issues.

Meanwhile, the local docket was advancing at a similar pace.  In March, the Commonwealth court had conducted a hearing on the declaratory judgment action -- at a time when the federal court was awaiting Caribevisión's English translation documents on the summary judgment issues, and also had received Nazario's motion for default.  After the local hearing, that court awaited the parties' submission of additional documents in order to adjudicate the declaratory judgment action.  By early April, Nazario had submitted a motion for judgment on the pleadings in the local forum.

At bottom, the local court was about as equally poised to resolve the action before it -- the release question -- as the federal court was to hear nearly the entirety of the parties' contract dispute. See Moses H. Cone, 460 U.S. at 21 (holding that measuring the comparable progress of the parallel suits is done in a "pragmatic, flexible manner, with a view to the realities of the case at hand"). The progress of litigation factor therefore points in neither direction.

**Source-of-Law**

The district court found that the source-of-law factor strongly favored abstention solely because the contract dispute was governed by Puerto Rico law. It did so despite readily acknowledging that its task in determining the parties' respective contractual obligations "appear[ed] simple enough." Agreeing that neither complex nor novel issues of local law are apparent, we conclude that no weight should have been given to the source-of-law factor.

It is only in "rare instances" that the presence of state-law issues creates any momentum toward deferring to pending local litigation under the Colorado River doctrine. See Moses H. Cone, 460 U.S. at 26; Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990). Such a rarity may arise where the state-law issues "present particularly novel, unusual or difficult questions of legal interpretation" that are best left to state court

-15-

resolution. Elmendorf Grafica, Inc., 48 F.3d at 52; see, e.g., Jiménez, 597 F.3d at 30; Currie, 290 F.3d at 9-13. It is appropriate that the rule is narrow; after all, there is nothing extraordinary about federal courts being called upon to analyze the law of different jurisdictions.

Here, the district court did not suggest that this simple contract case involving settled local law constituted such a rarity, and the appellee has not persuaded us. Compare Rojas-Hernandez, 925 F.2d at 496 (holding that "a relatively straightforward claim for damages under Puerto Rico tort law [which was] neither unsettled nor complex" did not display a "rare" circumstance weighing toward surrendering federal jurisdiction), with Jiménez, 597 F.3d at 30 (concluding that source-of-law factor heavily weighed in favor of abstention where the state law "issues that would inform [the federal court's] jurisdictional analysis remain[ed] unsettled" and could not be "intelligently answer[ed]" by the federal court absent some clear indication from the local forum).

**Res and the Remainder**

With respect to the final factor relied on by the district court -- whether either court has assumed jurisdiction over a res -- the court acknowledged that the contract claim involved "no tangible assets per se." The court nevertheless appeared to give this factor some weight. It concluded that, because Caribevisión deposited a "considerable sum of money" with the state court and the dollar

-16-

amount was a "subject of contention," the "prudential policy under Colorado River favors abstention."  We must take a different view.

In Jiménez, we likened the res factor to a "prudential" lens that may focus more on avoiding the inconsistent disposition of property, and less on in rem jurisdiction.  597 F.3d at 28 n.6; cf. Fairway Capital Corp., 483 F.3d at 41 (examining relative importance of state court's quasi in rem jurisdiction).  We ascribed some weight to the res factor because the parallel litigation there involved the enforcement of an option contract to purchase a penthouse apartment.  See Jimenez, 597 F.3d at 28.  Here, there is simply no res involved at all, and, thus, no force animating this factor.

As to the remaining factors, the district court found them to be neutral and the appellee offers no argument that any particular one weighs toward abstention.  Nor does the appellee argue that the district court's orders rejecting Nazario's motions to reconsider and to set aside the dismissal include any other grounds to support the district court's Colorado River analysis.  And although the appellant Nazario challenges the neutrality finding of one factor and dismissal as the relief afforded, we need not address either argument in light of our conclusion that none of the factors that were relied upon by the district court create any momentum toward abstention.

In the end, Nazario's federal action is a garden variety federal diversity case requiring only the application of settled principles of state law to an ordinary contract dispute. The parallel litigation, though giving rise to some normal risks of inexpediency, does not display exceptional circumstances that clearly justify departure from the federal court's obligation to exercise jurisdiction in this contract damages case.

We note an additional aspect of this case. In her brief, the appellant suggests that the company's filing of the local declaratory judgment was based on what she asserts is an improper motive. This accusation raises the question of whether a party's motivation in pursuing parallel state litigation may be a relevant ingredient in the exceptional-circumstances mix. The Supreme Court has remarked that such an angle has "considerable merit." See Moses H. Cone, 460 U.S. at 17-18 n.20; see also Villa Marina Yacht Sales, Inc., 915 F.2d at 15 (indicating approval for reviewing vexatious or contrived nature of both the federal and state court litigation). We need not consider this aspect further, though, because even if the company filed the local action in good faith, no exceptional circumstances exist in this case warranting dismissal on abstention grounds.

Finally, our decision revives at least Nazario's motions for partial summary judgment and for default, and perhaps other related pleadings. While the appellant urges us to resolve her

-18-

motion for partial summary judgment, we decline to do so in the first instance.  Additionally, we leave it for the district court to consider on remand the extent to which the local court's merits decision on the release question impacts the issues pending in the federal action.

## IV. Conclusion

The judgment is **reversed** and the case is **remanded** to the district court for further proceedings consistent with this opinion. Costs to appellant.